Reinaas v. Saul is next for argument. Mr. Duncan. May it please the court, Dana Duncan on behalf of Michael Edward Reinaas. Your Honor, the primary issue in this case is the treating physician rule. Treating physician rule is a, originally was a judicially created vehicle to give more weight to the treating physician over non-testifying hearsay evidence from state agency doctors created back in the 80s. Subsequently, the treating physician rule was codified by Social Security after it was implemented or the same rule was applied in multiple circuits. This case was filed prior to the modification of that treating physician rule, and so it still applies. A secondary issue in this case was raised is credibility, but that's only to the extent that the court feels that the treating source relied on Mr. Reinaas' subjective statements in assessing the case. The treating doctor in this case was Dr. Donald Bedeau, who had treated him for a number of years. Dr. Bedeau was an occupational medicine specialist. The administrative law judge, Judge Beauchamp, gave little weight to Dr. Bedeau's opinions and ultimately gave more weight to Dr. Ann Prosperi from the state agency. Dr. Prosperi was a hematologist. The ALJ specifically noted that Dr. Bedeau was not familiar with the Social Security disability program. What impact should that have on the review? None. It's not a da Vinci code. The Social Security Act uses terms such as sedentary, light, medium, heavy. It talks about occasional and frequent. It's the same standard that's used in the Dictionary of Occupational Titles. It's applied in the Workers' Compensation Act. Dr. Bedeau was an occupational medicine specialist. He handled all of the workers' compensation evaluations for Mayo Clinic in Eau Claire. He's since transferred to Mayo Clinic in Rochester and is handling them all there. So he was intimately familiar with those. Mr. Reynos, as the record notes, had three cervical spine fusions in 1996, May of 2010, and June of 2011. He had a closed period where he was granted benefits during that recovery period from those surgeries until July of 2012. In January 2013, he had shoulder surgery. In June of 2013, Dr. Bedeau recommended part-time work. He indicated that Mr. Reynos had moderate residual pain, weakness, loss of motion, and endurance in the shoulder. So he limited him to four hours per day. In part, it can be assumed because of the weakness and loss of range of motion that was to prevent him from having repetitive use of that arm. By April of 2014, Dr. Bedeau reviewed the case again. At that time, he did a full evaluation, and he looked at the case in detail. And as I can attest of having done probably over 1,000 Social Security hearings in my nation in support of his position is a rarity. It very seldom ever happens, and he outlined everything from tingling and pain in the arm to how he limits himself in the operation of his hobby farm to the fact that he has had multiple neck surgeries, that his condition had obviously worsened. Is that the 2013 evaluation? It's the 2014. 14 or 13? 14, Your Honor. And in fact, what I would honestly say is the onset date in this case was amended to January of 2013. And quite frankly, the May of 2013 limiting him to part-time work would be sufficient by itself to be a basis for disability. But specifically, the limitations in April of 2014 would definitively made him available for Social Security. He was having difficulty lifting 10 pounds frequently, 20 pounds occasionally, had limited range of motion, and his neck would be absent due to pain associated with that. Dr. Bedeau noted in April that he had problems with forward flexion, extension, rotation. He noted specifically, he has deteriorated significantly since I last saw him on June 17th of 2013. And based on that, he made his recommendations. Is there objective medical evidence that supports that opinion in the record? First of all, Judge, the question is what is objective medical evidence? A range of motion test is objective medical evidence. That's even further objective medical evidence when you consider it within the lens of an occupational medicine specialist who regularly does this type of testing and makes a determination as to what the work limitations are. The difference... Other than this range of motions test, is there anything else that you would characterize as objective medical evidence to support this? Just the fact, again, that he had already undergone the three previous fusions. There was a worsening of his condition. The numbness and tingling, which I believe was tested by his doing some sort of sensory testing using... And I think we've all been there where the back of the hammer is put on a portion of the body to test the amount of reaction, that type of thing. I would assume that that's done since he indicated specifically noted numbness and tingling in the extremities associated with the hands. And then also the fact that he had also evaluated in 2013 the problems associated with the shoulders. In contrast, the administrative law judge in this particular case indicated, as the court noted, that he had no previous knowledge of Social Security regulations. That, in and of itself, is insufficient. And then to note that there was a lack of any medical evidence to support the claim, so therefore it must have been subjective statements as support for those findings. It makes a fairly large leap to believe that a doctor who has, on the other side, orthopedic specialists in a contested workers' compensation claim is going to say things that are necessarily unsupported and put his own reputation at risk. This was a contested workers' compensation claim, and there was opposing counsel and opposing medical experts on the other side that would have been reviewing this information if Dr. Bedeau would have made himself rather in a very precarious position if he couldn't fully support his position. Ultimately, I guess the question becomes whether or not there was sufficient evidence, at least as far as the April of 2014 evaluation, to support Dr. Bedeau's opinions. We have an occupational specialist versus a hematologist. We have several years of treatment by Dr. Bedeau. He evaluated Mr. Arenas after his last two cervical spine injuries. He gave detailed findings in both 2013 and 2014. He noted the progression of the condition, the reasons given by Judge Meacham, the knowledge of the rules, the details, and the fact that his condition was inconsistent with the record as she outlined. He failed to take into note that he himself, or Dr. Bedeau, specifically noted the worsening of his condition by 2014, and those medical records were never evaluated. On that, if there are no questions, I'll reserve the minimal remaining time. Certainly, Mr. Duncan. Ms. Julis. Good morning. My name is Rachel Julis. I represent the Commissioner of Social Security in this matter. Appellant focuses largely on Dr. Bedeau's treating opinion from April 2014. I think it's important to note that from January 2013, when Mr. Arenas had shoulder surgery, to June 2013, Mr. Bedeau treated him, he went through physical therapy, and he steadily progressed. By June 2013, he was discharged completely from Dr. Bedeau's care and from physical therapy with no plans for further treatment. He then did not see a physical therapist or Dr. Bedeau until April 2014, nearly a year later, when he specifically returned to Dr. Bedeau for the purpose of obtaining disability paperwork. The LJ reasonably looked at this evidence and determined that the April 2014 opinion was not consistent with the remainder of the record, and therefore, it was not supported. In what way was it not consistent? Because the notes from January 2013 through June 2013 showed steady progress with range of motions, with strength in his ability to do functional activities, in his level of pain. He was also doing pretty strenuous activities. He was cutting wood with a chainsaw. He was doing yard work with a garden tiller. He was shoveling wet, heavy snow. He was also doing sort of more mundane activities like taking care of his young son, going shopping, doing household chores. The LJ reasonably determined that those kinds of activities were inconsistent. Would you classify those as daily living activities? I mean, the LJ recognized that Mr. Ennis did these at his own pace, but as the district court determined, just because you do it cautiously or at your own pace isn't enough to remand a case because that's still a reasonable basis for which the LJ to find that those activities are inconsistent with allegations that you're completely physically disabled and can't walk or stand or use your arms essentially at all. Also, as far as the lack of Social Security knowledge, the April 2014 opinion specifically said that Mr. Ennis met the requirements of Listing 1.04, which is a specific Social Security statute, so it was reasonable for the LJ to consider that factor. It's also explicitly in the regulations that familiarity with the Social Security program can be considered by an ALJ in evaluating a treating physician opinion or any other medical opinion. In, I believe it was July of 2013, Dr. Bordeaux limited him to part-time work. Yes. And the ALJ doesn't seem to have really factored that in. She considered that opinion, but that opinion isn't, I mean, she said that it was conclusive in the sense that it concluded he was disabled, which isn't entitled to any special deference and also said it was inconsistent with medical evidence, but that opinion is also not inconsistent with the residual functional capacity finding. Yes, it was for part-time work, but it was for work where he couldn't maintain sustained use of his right arm in an industrial sense. He couldn't lift 25 pounds. He had to avoid repetitive grasping, operating power tools, crimping, or other strenuous use of the right arm, and the residual functional capacity is for light work, which is frequently lifting 10 pounds. But there's a big difference if the limitation is for four hours of light work as opposed to light work. Yes, that is true, but I don't, the two are not necessarily inconsistent because the four hours applied to this strenuous industrial use of his right arm, so it doesn't speak to his ability to do a less demanding range of work, potentially for longer. The four hours in Dr. Bordeaux's 2013 opinion applied to four hours of light work per day, not industrial strength. I don't... You don't have to look through the record now, do you? No. I don't want to throw you off. I don't know where it said light work. I mean, his description of the work that he could do four hours per day was no sustained use of the arm or shoulder in an industrial sense, and therefore I recommend four hours per day, five days per week with a 25-pound lifting limit, avoidance of repetitive grasping, operating power tools, torque, crimping, or strenuous mechanical use of the right arm. So that's in excess of both the lifting requirements of light work and the use of the right arm in the residual functional capacity finding, which was limited to occasional pushing and about two and a half hours at most. Does that answer your question? It's fine. So the ALJ's decision here was supported by substantial evidence. She gave good reasons for giving little weight to this April 2014 opinion and for finding Mr. Rannis's subjective complaints, which this opinion was based at least partially on, not entirely credible. As I said, he was discharged from care in June 2013. He did not return for care again for almost a year, and that visit was specifically to obtain disability paperwork. His surgeon offered him cortisone injections in July of 2013. If he had further pain, he never pursued that option. He never went back for any other method of pain relief or physical therapy, though he did seek medical care in that period for an acute illness, a cold. And again, his activities were fairly strenuous, and the ALJ reasonably considered that they were inconsistent with Mr. Rannis's subjective allegations that he was extremely physically limited. The standard of review when evaluating these kinds of cases is extremely deferential. An ALJ's decision must only be supported by substantial evidence, and as the Supreme Court recently clarified, the standard for what constitutes substantial evidence is not high. The ALJ's reasoning in this case easily satisfies that standard, and this Court should uphold her finding. Unless there are any further questions, the committee will address them briefly. Thank you, Counsel. Thank you. Mr. Duncan, you have 20 seconds. We'll round it up to 30. If there are no questions, then I'll just let it go. So, thank you very much for your attention. Okay. Thank you very much. The case is taken under advisement.